# Matter of Juan M. CARDIEL-Guerrero, Respondent

File A090 828 462 - Eloy, Arizona

*Decided June 12, 2009*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

A conviction for receipt of stolen property under section 496(a) of the California Penal Code, with a sentence of imprisonment of at least 1 year, categorically qualifies as a receipt of stolen property aggravated felony conviction under section 101(a)(43)(G) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(G) (2006).

FOR RESPONDENT:  Kara Hartzler, Esquire, Florence, Arizona

AMICUS CURIAE:[1]  Holly S. Cooper, Esquire, Davis, California

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Jennifer M. Wiles, Assistant Chief Counsel

BEFORE:  Board Panel: FILPPU, PAULEY, and WENDTLAND, Board Members.

FILPPU, Board Member:

In a decision dated January 7, 2008, an Immigration Judge found the respondent removable under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (2006), as an alien convicted of an aggravated felony, denied his motion to terminate the proceedings, and ordered him removed from the United States.  The respondent has timely appealed from that decision.  The appeal will be dismissed.

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondent, a native and citizen of Mexico, entered the United States without documentation in 1979.  He was later admitted to the United States as a lawful permanent resident on May 3, 1989.  Subsequently, on December 12, 2006, the respondent was convicted in the California Superior Court, County of Los Angeles, of receiving stolen property in violation of section 496(a) of

---

[1] We acknowledge with appreciation the thoughtful arguments raised in the brief submitted by amicus curiae.

the California Penal Code, and he was sentenced to 1 year and 4 months' imprisonment.  The respondent was placed in removal proceedings with the issuance of a Notice to Appear (Form I-862) on July 11, 2007.  During his proceedings, the respondent denied the charge of removability under section 237(a)(2)(A)(iii) of the Act, arguing that his conviction is not for an aggravated felony as that term is defined under section 101(a)(43)(G) of the Act, 8 U.S.C. § 1101(a)(43)(G) (2006).  The respondent also filed a motion to terminate his proceedings on the same basis.

In his decision, the Immigration Judge rejected the respondent's arguments and found that his conviction was for a "theft" offense in accordance with *Gonzales v. Duenas-Alvarez*, 549 U.S. 183 (2007).  The Immigration Judge also concluded that the respondent's offense was a crime involving moral turpitude, so a waiver under section 212(h) of the Act, 8 U.S.C. § 1182(h) (2006), would be required to adjust his status.  The Immigration Judge determined that the respondent was ineligible for the waiver because he was a lawful permanent resident convicted of an aggravated felony.[2]  The Immigration Judge noted the respondent's ineligibility for any other form of relief and ordered him removed to Mexico.  On appeal, the respondent contends that he is not removable as an aggravated felon.

## II.  ANALYSIS

Section 101(a)(43)(G) of the Act defines an aggravated felony as "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year."  There is no dispute that the respondent's conviction for receipt of stolen property under section 496(a) of the California Penal Code resulted in a sentence to a term of imprisonment of at least 1 year.  Therefore the respondent's removability turns on whether the offense defined by that statute qualifies as a "theft offense (including receipt of stolen property)."

In *Matter of Bahta*, 22 I&N Dec. 1381 (BIA 2000), we considered whether an alien's conviction for attempted possession of stolen property in violation of section 205.275(1) of the Nevada Revised Statutes qualified as a conviction for a "theft" offense within the meaning of section 101(a)(43)(G) of the Act. In that decision, we adopted the approach that "the 'receiving stolen property' parenthetical in section 101(a)(43)(G) of the Act was intended to clarify that the term 'theft' was not being used in its limited, traditional sense to require proof that the offender was involved in the actual taking of the property at issue."  *Id.* at 1390.  Because we were attempting to arrive at a reasonable

---

[2] The respondent does not dispute the Immigration Judge's decision in this regard on appeal.

interpretation of the term "theft offense," the focus of the discussion in *Bahta* was necessarily different from ours here.

Turning to the case before us, we first conclude that "receipt of stolen property" is not merely a subset of "theft" as that term is used in section 101(a)(43)(G) of the Act, because each can be considered to be a distinct and separate offense. In this regard, we observe that under the law of a significant number of jurisdictions, an offender cannot be convicted of both "theft" and "receipt" based on the same act, on the theory that a thief may not receive property from himself.[3]

Further, in considering the breadth of State statutes, we note that while some jurisdictions include elements of "theft" in their receiving stolen property statutes, many do not. Thus, while the two offenses are closely related, not all receiving offenses qualify as "theft" offenses within the particular prosecuting jurisdiction. If "receipt of stolen property" crimes were merely one subset of theft offenses, including all theft elements plus some others, there would be no need to reference "receipt" crimes in the Act, because the "theft" category would be sufficient by itself to cover "receipt" crimes. We therefore understand that in adding "receipt of stolen property" to the aggravated felony definition in section 101(a)(43)(G) of the Act, Congress recognized the historically documented distinction between the two offenses and intended to include both within the definition. Consequently, we find that "theft" and "receipt of stolen property" can be separate offenses and that it is therefore not necessary to establish the elements of a "theft" offense to demonstrate that a conviction for "receipt of stolen property" qualifies as an aggravated felony conviction under section 101(a)(43)(G) of the Act. *See Hernandez-Mancilla v. INS*, 246 F.3d 1002, 1008-09 (7th Cir. 2001) ("[W]e read 'theft offense' as

---

[3] *See Scott v. State*, 374 So.2d 316 (Ala. 1979); *State v. Keel*, 672 P.2d 197 (Ariz. App. 1983); *People v. Hepler*, 665 P.2d 627 (Colo. App. 1982); *State v. Palkimas*, 219 A.2d 220 (Conn. 1966); *Schummer v. State*, 657 So.2d 3 (Fla. Dist. Ct. App. 1995); *State v. Alvarez*, 678 P.2d 1132 (Kan. Ct. App. 1984); *State v. Williams*, 359 So.2d 115 (La. 1978); *State v. Thibodeau*, 317 A.2d 172 (Me. 1974); *Commonwealth v. McCaffery*, 732 N.E.2d 911 (Mass. App. Ct. 2000); *McClain v. State*, 625 So.2d 774 (Miss. 1993); *State v. Cole*, 744 P.2d 526 (Mont. 1987); *State v. Martin*, 206 N.W.2d 856 (Neb. 1973); *State v. Chaisson*, 458 A.2d 95 (N.H. 1983); *State v. Stephens*, 797 P.2d 314 (N.M. App. 1990); *People v. Daghita*, 301 N.Y. 223 (1950); *State v. Perry*, 287 S.E.2d 810 (N.C. 1982); *State v. Carlton*, 378 P.2d 557 (Or. 1963); *State v. Silva*, 292 A.2d 228 (R.I. 1972); *State v. McNeil*, 445 S.E.2d 461 (S.C. App. 1994); *State v. Cole*, 645 S.W.2d 417 (Tenn. Crim. App. 1982); *Lackey v. State*, 832 S.W.2d 162 (Tex. Crim. App. 1992); *State v. Bleau*, 428 A.2d 1097 (Vt. 1981); *State v. Watts*, 309 S.E.2d 101 (W.Va. 1983); *State v. Godsey*, 75 N.W.2d 572 (Wis. 1956).

an umbrella label, and 'including receipt of stolen property' as indicating that the label encompasses a myriad of offenses.").[4]

Section 496(a) of the California Penal Code provided as follows, in pertinent part:

> Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a state prison, or in a county jail for not more than one year.

The respondent contends that this offense does not qualify categorically as a "theft offense (including receipt of stolen property)" for two reasons.[5] First, he argues that one who is convicted of aiding in the concealment of stolen property can only be deemed to have committed a theft as an accessory after the fact, a crime that bears such an attenuated relationship to any actual taking of the property that it cannot be considered a theft offense. Second, he argues that section 496(a) encompasses offenses that are premised on "extortion," a species of *consensual* taking that falls outside the generic definition of theft announced by the United States Supreme Court in *Gonzales v. Duenas-Alvarez*, 549 U.S. 183.[6] We will address each argument in turn.

The respondent argues that section 496(a) does not define a categorical "theft offense (including receipt of stolen property)" on the theory that "aiding in the concealment" of stolen property is an accessory-after-the-fact crime. The respondent's argument in this regard reflects a misunderstanding of the law of accessory liability as it applies to substantive offenses falling within the language of section 101(a)(43)(G) of the Act. We have held that "receipt of stolen property" under that section encompasses not just the act of receipt

---

[4] There are jurisdictions that include "theft" elements within their receipt of stolen property provisions, such that an overlap may exist.

[5] Although the respondent submitted his brief 1 day past the due date, we accept the respondent's late-filed brief and have considered it in making our decision.

[6] The Supreme Court accepted as a generic definition of theft the formulation set forth by the United States Court of Appeals for the Ninth Circuit in *United States v. Corona-Sanchez*, 291 F.3d 1201 (9th Cir. 2002) (en banc), *superseded on other grounds by* U.S. Sentencing Guidelines Manual § 2L1.2, cmt. n.4 (2002). The Ninth Circuit held that an offense qualifies categorically as a "theft offense (including receipt of stolen property)" within the meaning of section 101(a)(43)(G) of the Act if it necessarily encompasses "'a taking of property or an exercise of control over property without consent with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent.'" *Id.* at 1205 (quoting *Hernandez-Mancilla v. INS*, 246 F.3d at 1009).

itself, but also the category of offenses that involve knowing possession, concealment, or retention of stolen property from its rightful owner *after* receipt. *See Matter of Bahta*, 22 I&N Dec. 1381. Every Federal court of appeals to have addressed the question has held to the same effect, including the United States Court of Appeals for the Ninth Circuit, in whose jurisdiction this proceeding arises. *See Randhawa v. Ashcroft*, 298 F.3d 1148, 1153-54 & n.5 (9th Cir. 2002) (holding that knowing receipt, purchase, concealment, or possession of stolen mail in violation of 18 U.S.C. § 1708 is categorically an aggravated felony under section 101(a)(43)(G)); *see also Abimbola v. Ashcroft*, 378 F.3d 173, 179-80 (2d Cir. 2004); *United States v. Vasquez-Flores*, 265 F.3d 1122, 1125 (10th Cir. 2001); *Hernandez-Mancilla v. INS*, 246 F.3d at 1009. While this whole class of offenses necessarily relates to criminal conduct committed after property has been taken from its rightful owner, such offenses *are not* considered to be aggravated felonies based on the theory that one who knowingly receives, possesses, or conceals stolen property is an "accessory after the fact" to the initial theft.[7] On the contrary, receipt of stolen property and related offenses are distinct from the underlying theft offense and qualify as aggravated felonies in their own right under section 101(a)(43)(G).

Under California law, the knowing concealment of stolen property is "a continuing offense," separate from the discrete crime of receipt, and it "'consists of the act of intentionally secreting stolen property in violation of the affirmative duty to return it . . . to its rightful owner.'" *People v. Grant*, 6 Cal. Rptr.3d 560, 573 (Cal. Ct. App. 2003) (quoting *Williams v. Superior Court*, 146 Cal. Rptr. 311, 319 (Cal. Ct. App. 1978)). In light of *Matter of Bahta*, 22 I&N Dec. 1381, there is no dispute that concealment of stolen property under section 496(a) would qualify as an aggravated felony in its own right under section 101(a)(43)(G). And thus one who violates section 496(a) by *aiding* in the concealment of stolen property—by, for example, falsely disclaiming knowledge of the whereabouts of such property while under questioning by police or by the rightful owner—has not committed "theft" as an accessory after the fact, as the respondent would have it, but has instead committed "concealment of stolen property" *as a second-degree principal*, that

---

[7]  The Supreme Court has held that the concept of a "theft offense" includes aiding and abetting offenses, provided that the offender's criminal liability was premised on his status as either a second-degree principal or an accessory before the fact. *Gonzales v. Duenas-Alvarez*, 549 U.S. 183. The Court expressly declined to resolve the question whether the concept of a "theft offense" can include crimes committed by one who was convicted as an accessory *after* the fact. *Id*. at 194. As our discussion indicates, we need not resolve this issue in the context of this case.

is, as one who aids in the commission of the "continuing" concealment offense *while that offense is ongoing*.

The Supreme Court holds that one who is convicted of aiding and abetting a "theft offense (including receipt of stolen property)" as a second-degree principal has been convicted of an aggravated felony under section 101(a)(43)(G) to the same extent as a first-degree principal. *See Gonzales v. Duenas-Alvarez*, 549 U.S. at 189. By the same token, we conclude that one who is convicted of aiding and abetting the knowing concealment of stolen property as a second-degree principal has committed a "theft offense (including receipt of stolen property)" within the meaning of *Matter of Bahta,* 22 I&N Dec. 1381, and *Randhawa v. Ashcroft*, 298 F.3d 1148, and is no less susceptible to aggravated felony treatment than the person who knowingly possesses or conceals the stolen property itself. Accordingly, although section 496(a) of the California Penal Code encompasses the offense of aiding in the concealment of stolen property, we hold that such a crime does not fall outside the generic definition of a "theft offense (including receipt of stolen property)." Under the circumstances, we determine that the respondent's conviction under section 496(a) was for an offense that qualifies categorically as an aggravated felony under section 101(a)(43)(G) of the Act.

Our conclusion is buttressed by an historical survey of the treatment of the phrase "aids in concealing" in various United States jurisdictions. For immigration purposes, Congress did not cross-reference a Federal statute in defining "receipt of stolen property" in section 101(a)(43)(G) of the Immigration and Nationality Act. We therefore define the offense based on the "generic, contemporary meaning" of the statutory words at the time the statute was enacted. *Taylor v. United States*, 495 U.S. 575, 598 (1990); *see also Estrada-Espinoza v. Mukasey*, 546 F.3d 1147 (9th Cir. 2008) (en banc); *United States v. Iverson*, 162 F.3d 1015, 1022 (9th Cir. 1998) ("When a statute does not define a term, we generally interpret that term by employing the ordinary, contemporary, and common meaning of the words that Congress used."); *Matter of Rodriguez-Rodriguez*, 22 I&N Dec. 991 (BIA 1999). While we generally look to Federal law, we are not obligated to adopt a Federal or State statutory provision, so Federal law is not our only consideration. *See Matter of Rodriguez-Rodriguez*, 22 I&N Dec. at 994 ("The Attorney General is charged with the administration and enforcement of the Act, and she has delegated to this Board the interpretation of the definition of an aggravated felony . . . ."). Thus we note that in determining a statute's generic, contemporary meaning, the Ninth Circuit has considered, inter alia, sources such as the Model Penal Code, the treatise of Professor Wayne R. LaFave on criminal law, modern State cases, and dictionaries. *See, e.g.*, *United States v. Gomez-Leon*, 545 F.3d 777 (9th Cir. 2008).

17

California's inclusion of the phrase "aids in concealing" in its statute criminalizing the receipt of stolen property is not unique. At the time California adopted its receipt of stolen property statute in 1935,[8] many States, as well as the Federal Government, included this phrase in their receipt of stolen property statutes, and several, like California, continue to do so today.[9] Other States do not include the phrase "aids in concealing" in their receipt of stolen property statutes but have found such a concept to be included through case law. *See, e.g.*, *State v. Brady*, 75 S.E.2d 791, 793 (N.C. 1953) (adopting the definition of receiving stolen goods as set forth in 1 *Wharton's Criminal Evidence*, § 325b, at 643 (10th ed.), in which the essential elements of the crime of receiving stolen goods that must be proven are stated as follows: "(a) The stealing of the goods by some other than the accused; (b) that the accused, knowing them to be stolen, received or aided in concealing the goods, and (c) continued such possession or concealment with a dishonest purpose").

However, we find particularly instructive the fact that both the Federal Government and a large number of States that once included "aids in concealing" in their receipt of stolen property statutes have since opted to remove this phrase. For example, in 1875, Congress enacted a Public Law criminalizing larceny of United States property, in which it stated, in relevant part, that "if any person shall receive, conceal, or aid in concealing . . . any money, property, record, voucher, or valuable thing whatever, of the moneys, goods, chattels, records, or property of the United States," said person would be subject to a fine not exceeding $5,000, or imprisonment at hard labor in the penitentiary not exceeding 5 years, or both. Act of March 3, 1875, 43 Cong. Ch. 144; 18 Stat. 479. This law was recodified in substantially the same form by Congress in 1909. *See* Act of March 4, 1909, ch. 321, § 48, 35 Stat. 1088, 1095, 1096-98. This statute was subsequently codified with the same "aid in concealing" language at 18 U.S.C. § 101 in 1940, until taking its present form at 18 U.S.C. § 641 in 1948. *See* Act of June 25, 1948, ch. 645, § 1, 62 Stat. 725. The historical and statutory notes to § 641 state that the words "or aid in concealing" were specifically omitted from the Federal theft statute in 1948 as being "unnecessary" in view of the enactment of 18 U.S.C. § 2, which makes those who commit an offense against the United States or who aid, abet, counsel, command, induce or procure its commission punishable as a principal.

---

[8] The receipt of stolen property statute was added to the California Penal Code in 1935 as section 496bb. 1935 Cal. Stat., c. 434, p. 1483, § 1. It was renumbered to the current section 496 in 1951. 1951 Cal. Stat., c. 97, p. 354, § 2.

[9] *See* Mass. Gen. Laws Ann. ch. 266, § 60 (West 2000); Mich. Comp. Laws Ann. ch. 600.2919a (West 2007); Okla. Stat. Ann. tit. 21, § 1713 (West 2002); Utah Code Ann. § 76-6-408 (West 2005); V.I. Code Ann. tit. 14, § 2101 (West 2003).

*See* 18 U.S.C. § 2(a) (2006).  In other words, Congress viewed the phrase "or aid in concealing" in the receipt of stolen property provision as redundant in light of its decision to treat aiders and abettors as principals, such that including only the word "conceals" in the statute was legally sufficient to encompass those who aid in concealing.

Similarly, a number of States included "aids in concealing" in former versions of their receipt of stolen property statutes at the turn of the 20th century.[10]  A review of the current receipt of stolen property statutes from these particular jurisdictions reveals that while many of them retain the word "conceal," all of them, with the exception of Michigan, have removed the phrase "aid in concealing" from their receipt statutes.[11]  We find it unlikely that these States suddenly decided to stop penalizing those who were guilty of aiding in the concealment of stolen property.  Rather, it appears likely that these jurisdictions, like the Federal Government, felt that the phrase "aids in concealing" was no longer necessary, because all States have now expressly

---

[10] *See, e.g.*, *Sellers v. State*, 49 Ala. 357 (1873) ("'Any person who buys, receives, conceals, or aids in concealing any personal property whatever, knowing that it has been stolen, and not having the intent to restore it to the owner, must, on conviction, be punished as if he had stolen it.'" (quoting section 3710 of the Alabama Revised Code)); *Bradley v. State*, 20 Fla. 738 (1884) ("'Whoever buys, receives or aids in the concealment of stolen money, goods or property, knowing the same to have been stolen, shall be punished by imprisonment . . . .'" (quoting chapter 1637, sub-chapter 4, section 39 of the 1868 Florida Laws)); *State v. Stimpson*, 45 Me. 608 (1858) (citing chapter 156, section 10 of the Maine Revised Statutes, making one liable who knowingly receives or aids in concealing goods stolen in another State); *People v. Reynolds*, 2 Mich. 422 (1852) ("'Every person who shall buy, receive or aid in the concealment of any stolen money, goods, or property, knowing the same to have been stolen, shall be punished . . . .'" (quoting, chapter 154, section 20 of the 1846 Michigan Revised Statutes)); *People v. Hartwell*, 59 N.E. 929 (N.Y. 1901) ("'A person, who buys or receives any stolen property, . . . knowing the same to have been stolen . . . or who corruptly, for any money, property, reward, or promise or agreement for the same, conceals, withholds, or aids in concealing or withholding, any property, knowing the same to have been stolen, . . . is guilty of criminally receiving such property . . . .'" (quoting section 550 of the New York Penal Code)); *State v. Salle*, 208 P.2d 872 (Wash. 1949) (noting that section 2601(5) of the Washington Rem. Revised Statutes makes a person guilty of larceny who, knowing property to have been appropriated in a manner constituting larceny, brings property into the State, or buys, sells, receives, or aids in concealing or withholding it); *Nelson v. State*, 9 N.W. 388 (Wis. 1881) ("Our statute provides that a person who receives, conceals, or aids in concealing, stolen property, knowing the same to have been stolen, shall receive the same punishment as is prescribed for the stealing of such property." (citing section 4417 of the  Wisconsin Revised Statutes)).

[11] *See* Ala. Code § 13A-8-16 (1994); Del. Code Ann. tit. 11, § 851 (1995); Fla. Stat. Ann. § 812.014 (West 2007); 17-A Me. Rev. Stat. Ann. tit. 17, § 359 (2006); Mich. Comp. Laws Ann. § 750.535 (2007); N.Y. Penal Law §§ 165.40-.54 (McKinney 1998); Wash. Rev. Code Ann. § 9A.56.140 (West 2004); Wis. Stat. Ann. § 943.34 (West 2005).

abrogated the distinction between first-degree principals and aiders and abettors formerly classified as second-degree principals. *See Gonzales v. Duenas-Alvarez*, 549 U.S. at 820. In light of this history, we find it reasonable to conclude that in October 1994 when Congress enacted section 101(a)(43)(G) of the Act, it was adopting the ordinary, contemporary, and common meaning of "receipt of stolen property," which included those who aided in concealing said stolen property. *See* Immigration and Nationality Technical Corrections Act of 1994, Pub. L. No. 103-416, § 222(a), 108 Stat. 4305, 4320.

As to the second argument raised by the respondent concerning extorted property, we begin by acknowledging that under California law, the offense of extortion includes as an element the victim's "consent" to the expropriation of his property. *See* Cal. Penal Code § 518 (West 1999) ("Extortion is the obtaining of property from another, with his consent, or the obtaining of an official act of a public officer, induced by a wrongful use of force or fear, or under color of official right."); *see also* 18 U.S.C. § 1951(a)(2) (2006). It is evident, however, that the concept of "consent" used in the law of extortion is highly unconventional and does not connote a voluntary or elective conferral of property. On the contrary, the California courts have long recognized that the "consent" required for extortion is a "coerced and unwilling consent" that is compelled by the offender's "wrongful use of force or fear." *People v. Goodman*, 323 P.2d 536, 541 (Cal. Ct. App. 1958); *see also People v. Norris*, 706 P.2d 1141, 1146 (Cal. 1985) (Kaus, J., concurring); *People v. Torres*, 39 Cal. Rptr.2d 103, 110 & n.6 (Cal. Ct. App. 1995) (observing that "[t]he paradox of a taking which is both consensual *and* the result of force or fear has been the subject of numerous court decisions and commentaries"); *cf. Matter of Garcia-Madruga*, 24 I&N Dec. 436, 440 (BIA 2008) (finding that welfare fraud does not constitute a "theft offense" under section 101(a)(43)(G) of the Act because fraud ordinarily involves the taking or acquisition of property with consent, albeit fraudulently obtained). In view of this fact, it is not at all clear to us that extortion would fall outside the scope of the term "theft offense," as defined by *United States v. Corona-Sanchez*, 291 F.3d 1201 (9th Cir. 2002) (en banc), *superseded on other grounds by* U.S. Sentencing Guidelines Manual § 2L1.2, cmt. n.4 (2002), simply by virtue of the fact that an extortionate taking is, in some peculiar sense, not effected "without consent." *See supra* note 6. The Ninth Circuit has never so held, and common sense dictates that we construe the Ninth Circuit's use of the words "without consent" in their conventional sense, as denoting any involuntary or unwilling taking of property. In our view, "consent" obtained under extreme duress through the wrongful use of

force or fear does not constitute consent within the meaning of *United States v. Corona-Sanchez*.[12]

Moreover, we find that a survey of State theft statutes supports our view that receipt of extorted property is included in the Federal aggravated felony "theft offense (including receipt of stolen property)" in section 101(a)(43)(G) of the Act. At common law, extorted property was separate and distinct from property obtained by other means, such as by larceny or embezzlement. However, by 1994 when section 101(a)(43)(G) was added to the Act, most States had adopted the Model Penal Code's approach of consolidating the various common law offenses of larceny, embezzlement and false pretenses, receiving stolen property, and blackmail or extortion into a unitary "theft" offense. *See* 3 Wayne R. LaFave, *Substantive Criminal Law* § 19.8(d) & nn. 22 & 29 (2d ed. 2008). Of the States identified by Professor LaFave as having adopted consolidation statutes, a majority included extorted property in such statutes by 1994.[13] While a few States used the phrase "property obtained by threat," or something similar, rather than the word "extortion" in their consolidated theft statutes, those States generally have indicated, either through caselaw, explanatory notes following such statutes, or in the statutes themselves, that the two concepts are synonymous.[14]

While few States, if any, have followed California's approach of explicitly including extorted property directly into their receipt of stolen property

---

[12] Notably, in a recent unpublished decision, the Ninth Circuit considered an argument similar to that offered by the respondent but held that "the requirement that the property have been obtained by extortion does not cause the full range of conduct criminalized by § 496(a) to exceed the scope of a generic theft offense." *Chapling v. Mukasey*, 267 Fed. Appx. 516, 517 (9th Cir. 2008) (unpublished) (finding an offense under section 496(a) of the California Penal Code to be an aggravated felony despite the inclusion of receipt of property obtained by extortion within its range of criminalized conduct).

[13] See 3 LaFave, *supra*, at n.22, for the consolidated theft statutes referenced by Professor LaFave for the following States, which we find included extorted property in their statutes: Alabama, Arizona, Arkansas, Colorado, Connecticut, Delaware, Georgia, Idaho, Illinois, Indiana, Kansas, Kentucky, Maine, Missouri, Montana, Nebraska, New Hampshire, New Jersey, New York, North Dakota, Ohio, Oregon, Pennsylvania, South Dakota, Texas, Utah, Washington.

[14] *See*, *e.g.*, Mont. Code. Ann. § 45-6-301 (1994) (noting that while Montana's consolidated theft statute criminalized purposely or knowingly obtaining control over the property of the owner by threat, such threat "includes virtually any form of extortion") (Compiler's Comments ); Wash. Rev. Code Ann. § 9A.56.110 (West 1994) ("'Extortion' means knowingly to obtain or attempt to obtain by threat property or services of the owner . . . ."); *United States v. Karigiannis*, 430 F.2d 148 (7th Cir. 1970) (indicating that the Illinois consolidated theft statute at chapter 38, section 16-1 of the Illinois Revised Statutes, which prohibited obtaining control over property of the owner by threat, described the offense generically classified as extortion).

statutes, a majority of the States that have adopted consolidated theft statutes incorporate the concept of extorted property in their receipt statutes through other mechanisms, often following a multistep process. Typically, States with consolidated theft statutes prohibit a person from receiving property knowing or believing it to have been "stolen." Stolen property, in turn, is defined as property that has been obtained by "theft." Finally, "theft" is generically defined under these consolidation statutes as including property that has been obtained, among other ways, by extortion.[15] It would have been redundant for such States to have specified that receipt of stolen property included property that had been "obtained in any manner constituting theft *or extortion*," as does California, because their generic concept of theft, by statutory definition, already included extortion.

For example, as of 1994 Alabama's receipt of stolen property statute declared that a person was guilty of receiving stolen property if the person intentionally received, retained, or disposed of property knowing or having reasonable grounds to believe that the property had been "stolen." Ala. Code § 13A-8-16 (1994). Pursuant to Alabama's adoption of its consolidated theft statute, the term "stolen" was defined as explicitly including theft by extortion. Ala. Code § 13A-8-1(12) (1994). Similarly, Delaware's receipt of stolen property statute considered a person to have received stolen property if he intentionally received, retained, or disposed of property of another person with intent to deprive the owner of it or to appropriate it, knowing that it had been acquired under circumstances amounting to theft. Del. Code Ann. tit. 11, § 851 (1994). Delaware's consolidated theft statute then defined theft to include any of the acts described in sections 842 to 846, which included extortion. Del. Code Ann. tit. 11, §§ 841, 846 (1994). In addition, by 1994 a number of States had repealed their separate receipt of stolen property statutes altogether, instead placing receipt of stolen property and extortion together under the unified concept of "theft."[16] Accordingly, receiving

---

[15] Notably, the Supreme Court has found that the Federal law prohibiting acts of extortion, codified at 18 U.S.C. § 1951 in the "Hobbs Act," expanded the scope of common-law extortion to include private individuals, but it retained the requirement that the property so extorted must be "obtained." *Scheidler v. Nat'l Org. For Women, Inc.*, 537 U.S. 393, 402-03 (2003). As the Court explained, "[W]e have construed the extortion provisions of the Hobbs Act at issue in these cases to require not only the deprivation but also the acquisition of property." *Id*. at 404.

[16] *See, e.g.*, Idaho Code § 18-2401 (1994) ("Conduct denominated theft in this chapter constitutes a single offense superceding [sic] the separate offenses previously known as embezzlement, extortion, false pretenses, cheats, misrepresentations, larceny and receiving stolen goods."); Kan. Stat. Ann. § 21-3701 (1994) ("[Section 21-3701] . . . consolidates the present crimes of larceny, embezzlement, false pretense, extortion, receiving stolen property

(continued...)

property obtained through extortion would appear to be encompassed under the consolidation statute itself in such States, which endeavored to criminalize every conceivable form of theft in a single statute.

Furthermore, even if extortion would not itself constitute a "theft offense (including receipt of stolen property)" because of the "consent" issue discussed above, liability under section 496(a) of the California Penal Code does not depend upon proof that the accused committed theft or extortion. *See People v. Jaramillo*, 548 P.2d 706, 709 (Cal. 1976) (holding that one may not be convicted of both stealing property and receiving it). Rather, such liability attaches to third parties who, although not guilty of the underlying taking, nevertheless receive or conceal property knowing it to have been stolen or obtained by extortion. Thus, assuming arguendo that extortion is not "theft" because the victim consented in some aberrant sense, it can hardly be argued that the victim of extortion has also consented to having his property "fenced," concealed, or otherwise withheld from him against his will by third parties. Accordingly, we reject the respondent's contention that a conviction

---

(...continued)
and the like into a single crime of theft. The former distinctions are historical but apparently served no useful purpose. They tended to make the law unduly complex, and created unnecessary problems in pleading and proof. All involved the common elements of an obtaining of property by dishonest means. The distinctions were not sufficiently basic to require treatment in separate sections.") (historical notes); Me. Rev. Stat. Ann. tit. 17-A, § 351 (1994) ("Conduct denominated theft in this chapter constitutes a single crime embracing the separate crimes such as those heretofore known as larceny, larceny by trick, larceny by bailee, embezzlement, false pretenses, extortion, blackmail, shoplifting and receiving stolen property."); Mont. Code. Ann. § 45-6-301(1994) ("The Montana Criminal Law Commission intended that this section cover every conceivable form of theft and in so doing, eliminate the common-law distinctions which encumbered virtually every one of the theft-related offenses.") (Compiler's Comments); N.D. Cent. Code § 12.1-23-01.1 (1994) ("Conduct denominated theft in sections 12.1-23-02 to 12.1-23-04 constitutes a single offense designed to include the separate offenses heretofore known as larceny, stealing, purloining, embezzlement, obtaining money or property by false pretenses, extortion, blackmail, fraudulent conversion, receiving stolen property, misappropriation of public funds, swindling, and the like."); Tex. Penal Code Ann. § 31.02 (Vernon 1994) ("Theft as defined in Section 31.03 constitutes a single offense superseding the separate offenses previously known as theft, theft by false pretext, conversion by a bailee, theft from the person, shoplifting, acquisition of property by threat, swindling, swindling by worthless check, embezzlement, extortion, receiving or concealing embezzled property, and receiving or concealing stolen property."); *State v. Tramble*, 695 P.2d 737, 741 (Ariz. 1985) (indicating that the "obvious purpose" in enacting the "omnibus" theft statute found at section 13-1802 of the Arizona Revised Statutes was to eliminate technical distinctions between various types of stealing and to deal with all forms in a single statute, thus simplifying prosecution for the unlawful acquisition of property belonging to others, however obtained).

under section 496(a) does not qualify categorically as a "theft offense (including receipt of stolen property)" simply because it encompasses the knowing receipt or concealment of property obtained by extortion.

Finally, we observe that amicus raises two arguments in its brief that, although not argued by either party on appeal, we believe should be addressed separately. First, amicus points out that in Professor LaFave's criminal law treatise, previously referenced in this decision, he states that the generic, contemporary meaning of receipt of stolen property contains at least the following elements: (1) the receiving of; (2) stolen property; (3) knowing it to be stolen; and (4) done with the intent to deprive the owner of his property. *See* 3 LaFave, *supra*, at § 20.2. Amicus asserts that section 496(a) of the California Penal Code does not include the fourth element, the intent to deprive the owner of his property. It is therefore argued that section 496(a) can never be found to satisfy the generic definition of receiving stolen property, as it has long been established by the Ninth Circuit that if a statute lacks an element of a generic crime, it necessarily fails under a categorical approach, and a modified categorical approach cannot be used to "narrow" the crime of conviction to conform to the generic crime. *See Estrada-Espinoza v. Mukasey*, 546 F.3d at 1159 (reaffirming the rule that the modified categorical approach does not apply "'[w]hen the crime of conviction is missing an element of the generic crime altogether, [because under such circumstances] we can never find that "a jury was actually required to find all the elements of" the generic crime'" (quoting *Navarro-Lopez v. Gonzales*, 503 F.3d 1063, 1073 (9th Cir. 2007) (quoting *Li v. Ashcroft*, 389 F.3d 892, 899-901 (9th Cir. 2004) (Kozinski, J., concurring)))).

We agree with amicus that section 496(a) of the California Penal Code does not contain an explicit written requirement that there be an "intent to deprive."[17] In *People v. Osborne*, 143 Cal. Rptr. 582, 584 (Cal. Ct. App.1978), the court of appeal noted that former section 496 of the California Penal Code, repealed in 1951, contained a requirement that the accused buy or receive stolen property "for his own gain or to prevent the owner from again possessing the property." By contrast, the current version of section 496 does not contain a specific element of fraudulent intent by the perpetrator (i.e., that he is acting for his own gain or to prevent the owner from again possessing the property) that the prosecution must prove. Nevertheless, California courts have repeatedly emphasized that while specific fraudulent intent is not an element of the current statute, "general criminal intent is

---

[17] As specifically observed by the Alaskan Supreme Court in *Hensel v. State*, 604 P.2d 222, 234 (Alaska 1979), "intent to deprive" language is rarely found in statutes prohibiting the receipt of stolen property.

necessary" to subject the accused to conviction under section 496. *People v. Dishman*, 180 Cal. Rptr. 467, 469-70 (Cal. Ct. App. 1982) (noting that the accused is subject to conviction under section 496 "so long as the jury finds that he had the requisite general criminal intent"); *People v. Wielograf*, 161 Cal. Rptr. 680, 684-85 (Cal. Ct. App. 1980) ("Although no other reported California case has been cited or found by independent research wherein the courts of this state have discussed the requisite criminal intent or mens rea necessary to sustain a conviction for receiving or concealing stolen property, it has been considered a 'general intent' rather than a 'specific intent' crime."). Such courts have found that in order to satisfy this requirement of "wrongful intent," it must be established that "the defendant received or concealed stolen property with general criminal intent to aid the thief, or to deprive the owner of possession, or renders [sic] more difficult a discovery by the owner, or to collect a reward." *People v. Wielograf*, 161 Cal. Rptr. at 685. Accordingly, the offense described in the California statute must result in some sort of a deprivation of property, at least temporarily, from the rightful owner.[18] *See also Randhawa v. Ashcroft*, 298 F.3d at 1154 (holding that a conviction for knowing possession of stolen mail inferentially contains the element of an intent to deprive the mail's true owner of the rights and benefits of ownership).

This interpretation appears to be entirely consistent with the "intent to deprive" element discussed by Professor LaFave in his treatise. In his discussion of the concept of intent to deprive, Professor LaFave noted that it was not enough for guilt that one receive stolen property with the knowledge that it was stolen. Otherwise, a police officer who caught a thief in possession of stolen property and who took the property from him in order to return it to its owner would be guilty. Instead, he posits that "[s]ome sort of a bad state of mind, in addition to the guilty knowledge, is required," even when this requirement is not spelled out in the statute defining the offense of receiving stolen property. 3 LaFave, *supra*, at § 20.2(e). Thus, Professor LaFave appears to have used "intent to deprive" in a general intent sense, much like the terms "wrongful intent," "guilty intent," or "general criminal intent" were used by California courts in the cases described above. Moreover, Professor LaFave provided several examples of actions that would show such intent to deprive, including receiving stolen property for the purpose of "aiding the thief," receiving such property in order to destroy it, and receiving such property with the intent to restore it for a reward. *Id.*

---

[18] Neither the respondent nor amicus claims that California would prosecute a receiver of stolen property who immediately and voluntarily restored the property to its owner. *See Gonzales v. Duenas-Alvarez*, 549 U.S. at 193 (requiring a "realistic probability" that a State would apply its criminal law to conduct outside the scope of an aggravated felony provision).

These examples closely track the definition of "general criminal intent" set forth by the California courts. Accordingly, we find that section 496(a) of the California Penal Code comports with the generic, contemporary meaning of receipt of stolen property, as described by Professor LaFave.

Notably, we confronted a similar situation in a different context in *Matter of Flores*, 17 I&N Dec. 225 (BIA 1980). In that case, we considered whether a conviction under 18 U.S.C. § 1426(b) involved fraud, such that it constituted a crime involving moral turpitude. In considering the statute, we observed that an intent to defraud the Government had not specifically been made an essential element of the statute and that a showing of such intent was not required to obtain a conviction under the statute. However, to obtain a conviction, the statute required proof of knowledge that the documents in question were false or counterfeit. We therefore found that fraud was inherent in the offense itself, so it was not necessary for the statute prohibiting it to include the usual phraseology concerning fraud in order for it to involve moral turpitude. *Id*. at 228. We find that a similar rationale applies in the case of California's receipt of stolen property statute, because it describes an offense in which deprivation from the true owner is inherent.

In addition, amicus argues that section 496(a) of the California Penal Code is overbroad, as some California cases have allowed for persons who have innocently obtained property and later withheld it from the owner to be prosecuted and convicted under that statute. Amicus argues that this shows that section 496(a) exceeds the generic definition, which requires that the receiver have knowledge that the property is stolen *at the time of receipt*. We disagree with that argument, including its underlying premise.

In *Matter of Bahta*, we reviewed the Federal and State receipt of stolen property statutes, as well as the Model Penal Code, to determine the ordinary, contemporary, and common meaning of the term "receipt of stolen property." Following this analysis, we concluded that "the predominant modern view is that the term 'receiving stolen property' is now used in a generic sense to encompass a number of closely related offenses, including the knowing possession, retention, withholding, or concealing of property with knowledge that it has been stolen." *Matter of Bahta*, 22 I&N Dec. at 1390. We reached that conclusion notwithstanding the argument by the respondent in *Matter of Bahta* that "possession" offenses are distinguishable because they do not require proof that the perpetrator had knowledge, at the time of receipt, that the property was stolen. Amicus's arguments on appeal do not cause us to depart from our conclusion. Accordingly, we find that California's receipt of stolen property statute, which, inter alia, prohibits the concealing, selling, or withholding of stolen or extorted property, or aiding in same, knowing it to have been so stolen or obtained, falls squarely within the generic and contemporary meaning of receipt of stolen property.

26

Thus, we agree with the Immigration Judge that the crime of which the respondent was convicted, and for which he was sentenced to more than 1 year of imprisonment, constitutes a receipt of stolen property offense and is an aggravated felony under section 101(a)(43)(G) of the Act. The respondent is therefore removable as charged under section 237(a)(2)(A)(iii) of the Act. Accordingly, the respondent's appeal will be dismissed.

**ORDER:** The appeal is dismissed.