PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

OMIMA IBRAHIM SOLIMAN,

*Petitioner,*

v.

ALBERTO R. GONZALES, Attorney General,

*Respondent.*

No. 04-1990

On Petition for Review of an Order of the
Board of Immigration Appeals.
(A45-292-699)

Argued: May 24, 2005

Decided: August 22, 2005

Before WILLIAMS, KING, and GREGORY, Circuit Judges.

---

Petition for review granted and order of removal vacated by published opinion. Judge King wrote the opinion, in which Judge Williams and Judge Gregory joined.

---

## COUNSEL

**ARGUED:** Thomas Kirk Ragland, ELLIOT & MAYOCK, Washington, D.C., for Petitioner. Daniel Eric Goldman, UNITED STATES DEPARTMENT OF JUSTICE, Office of Immigration Litigation, Washington, D.C., for Respondent. **ON BRIEF:** Thomas A. Elliot, Fabienne Chatain, ELLIOT & MAYOCK, Washington, D.C., for Petitioner. Peter D. Keisler, Assistant Attorney General, Civil Divi-

sion, James A. Hunolt, Senior Litigation Counsel, Michele Y. F. Sarko, Civil Division, Office of Immigration Litigation, Washington, D.C., for Respondent.

---

**OPINION**

KING, Circuit Judge:

Petitioner Omima Ibrahim Soliman has filed a petition seeking review by this Court of the July 13, 2004 decision of the Board of Immigration Appeals ("BIA") ordering her removal to Egypt. By our Order of June 21, 2005, we have granted the petition for review and vacated the BIA's order of removal, in that the BIA's order was premised on the erroneous determination that Soliman had been previously convicted of an "aggravated felony," as that term is defined in 8 U.S.C. § 1101(a)(43)(A)-(U).[1] This opinion further explains the rulings embodied in our June 21, 2005 Order, and it is filed pursuant thereto.

## I.

Soliman is a native of Egypt, and she immigrated to this country on May 31, 1996. On May 20, 2002, Soliman was indicted in Fairfax County, Virginia, for the offense of "Fraudulent Use of a Credit Card," in violation of Virginia Code § 18.2-195, for having represented that she was the holder of a credit card belonging to someone else, without the card holder's consent, to obtain property in excess of $200.[2] Soliman was convicted on June 10, 2002 and, on October

---

[1]More specifically, our Order of June 21, 2005 provided: "The Court grants petitioner's motion for an expedited decision, grants her petition for review and vacates the order of removal. An opinion will follow in due course."

[2]The state court indictment returned against Soliman in Virginia specifically alleged that she "did feloniously and with the intent to defraud obtain property valued in excess of $200.00, by representing, without the consent of the cardholder, that she was the holder of a Visa check card, issued to Helen Best. Va. Code § 18.2-195."

21, 2002, the court sentenced her to two years of incarceration, all suspended, plus two years of probation.

On December 16, 2003, the Immigration and Naturalization Service (the "INS") issued Soliman a Notice to Appear and initiated removal proceedings against her. The Notice to Appear classified Soliman as removable from this country pursuant to the provisions of 8 U.S.C. § 1227(a)(2)(A)(iii), which gives the Attorney General the authority to deport "[a]ny alien who is convicted of an aggravated felony at any time after admission." The aggravated felonies subject to this statutory provision are enumerated in 8 U.S.C. § 1101(a)(43)(A)-(U).[3] Of importance here, these aggravated felonies include "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year," § 1101(a)(43)(G) ("Subsection (G)"), and "an offense that . . . involves fraud or deceit in which the loss to the victim or victims exceeds $10,000," § 1101(a)(43)(M)(i) ("Subsection (M)(i)").

The INS's Notice to Appear alleged that Soliman's Virginia conviction for credit card fraud constituted a "theft offense" under Subsection (G). Soliman maintained otherwise, however, asserting that her offense was not a "theft offense" under Subsection (G), but rather a fraud offense, covered by Subsection (M)(i). According to Soliman,

---

[3]Section 1101(a)(43) of Title 8, United States Code, spells out the specific "aggravated felonies" which may result in deportation. Two of those aggravated felonies are relevant to our discussion today, § 1101(a)(43)(G) and (M)(i). These subsections provide:

(43) The term "aggravated felony" means—

. . .

(G) a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year;

. . .

(M) an offense that—

(i) involves fraud or deceit in which the loss to the victim or victims exceeds $10,000. . . .

8 U.S.C. § 1101(a)(43)(G), (M)(i).

the offense for which she was convicted involved less than the
$10,000 specified in Subsection (M)(i), and thus is not an aggravated
felony and a proper basis for deportation.[4]

By decision of January 29, 2004, the Immigration Judge (the "IJ")
rejected each of Soliman's contentions, agreeing with the INS and
concluding that her conviction was for a theft offense under Subsec-
tion (G). In so ruling, the IJ defined a "theft offense" as a criminal
offense where there is "a criminal intent to deprive the owner of the
rights and benefits of ownership." The IJ reasoned that, because Soli-
man "was not entitled to obtain the property that she did under the
statute under which she was convicted," her crime involved theft
within the meaning of Subsection (G).

The BIA affirmed the IJ's ruling by its Order of July 13, 2004 (the
"BIA Order"), from which Soliman's petition for review emanates.[5]
Although the BIA agreed with Soliman that her offense "by its terms,
involves fraud," it nonetheless concluded that the theft and fraud sub-
sections of § 1101(a)(43), spelled out in Subsections (G) and (M)(i),
"are not mutually exclusive," and ruled that "a crime which involves
fraud may also involve theft." BIA Order at 1. "Indeed," the BIA
observed, "the common definition of the term 'theft' includes fraud."
*Id.* (citing *Black's Law Dictionary*, defining theft as a "popular name
for larceny . . . [t]he fraudulent taking of personal property belonging
to another . . . without his consent, with the intent to deprive the
owner of the value of the same"). The BIA then defined a "theft
offense" as "the unlawful taking of property, whenever there is a
criminal intent to deprive the owner of the rights or benefits of owner-
ship, either permanently or less so." *Id.* at 2.

---

[4]The Virginia indictment specified only that Soliman's offense
involved "more than $200." The parties agree that the actual amount
involved in the offense was $ 1,427.38.

[5]The BIA Order was issued by a single member of the BIA only. Soli-
man objected to this procedure as contrary to the BIA's regulations for
the first time in her reply brief, but her objection is not properly before
us and is not resolved here. *See United States v. Lewis*, 235 F.3d 215,
218 n.3 (4th Cir. 2000) ("[A]n issue first argued in a reply brief is not
properly before a court of appeals.").

In assessing whether Soliman's conviction was for a theft offense, the BIA applied the "categorical approach" set forth and explained by the Supreme Court in *Taylor v. United States*, 495 U.S. 575, 598-600 (1990) (explaining that court analyzing prior conviction must first look to categorical nature of statute of prior conviction, and then, if necessary, look to certain facts underlying conviction). In so doing, the BIA first concluded that Virginia Code § 18.2-195, under which Soliman was convicted, is not a "categorical" theft statute — in other words, its elements are not the same as the elements of a theft offense under federal law. Looking then to Soliman's indictment to determine the particular facts underlying her conviction, the BIA found that the actual conduct underlying her offense was the functional equivalent of a theft offense as the BIA had defined it: "the unlawful taking of property, whenever there is a criminal intent to deprive the owner of the rights of benefits of ownership, either permanently or less so." BIA Order at 2. Specifically, the BIA concluded that, in Soliman's prosecution in Fairfax County, there had been an "unlawful taking of property" from *the merchant* because "[t]he fraud renders the taking unlawful"; further, it found there was "criminal intent to deprive the owner of the rights and benefits of ownership" because Soliman had deprived "*the card's true owner* of his or her benefits or rights of ownership." *Id.* (emphasis added).

By her petition for review, Soliman has raised a single issue: whether the BIA erred in determining that she was deportable because her Virginia conviction constituted an aggravated felony, *i.e.*, a "theft offense" pursuant to Subsection(G).

## II.

As an initial matter, we recognize that our jurisdiction to consider and resolve petitions for review from the decisions of the BIA is limited. Section 1252(a)(2)(C) of Title 8, United States Code, provides that no court has jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense. We have recognized, however, that we possess limited "jurisdiction to review factual determinations that trigger the jurisdiction-stripping provision" — specifically, (1) whether Soliman is an alien, and (2) whether she has been convicted of an aggravated felony. *See Ramtulla v. Ashcroft*, 301 F.3d 202, 203 (4th Cir. 2002)

(citing *Calcano-Martinez v. INS*, 533 U.S. 348, 350 n.2 (2001)). If either of these two factual determinations is found to be erroneous, we possess jurisdiction over Soliman's petition for review; otherwise, we are obliged to dismiss her petition. *See Lewis v. INS*, 194 F.3d 539, 542 (4th Cir. 1999) (explaining that "jurisdiction turns on presence, or lack thereof, of these two facts" and court therefore has "jurisdiction to review them").

By her petition for review, Soliman admits the fact that she is an alien. The only jurisdictional fact she contests is whether she was convicted in Virginia state court of an "aggravated felony" within the meaning of 8 U.S.C. § 1101(a)(43).

III.

In support of her position in this proceeding, Soliman makes two contentions. First, she maintains that her conviction in Virginia was for an offense that involves fraud or deceit, that she was not convicted of a theft offense, and that the BIA erred in improperly characterizing her conviction as a theft offense under Subsection (G). In support of this contention, she points to the definitions of "theft offense" adopted in similar proceedings by our sister circuits. *See Nugent v. Ashcroft*, 367 F.3d 162, 174 (3d Cir. 2004) (defining theft offense as "a taking of property or an exercise of control over property *without consent*") (emphasis added); *United States v. Corona-Sanchez*, 291 F.3d 1201, 1205 (9th Cir. 2002) (same); *United States v. Vasquez-Flores*, 265 F.3d 1122, 1125 (10th Cir. 2001) (same); *Hernandez-Mancilla v. INS*, 246 F.3d 1002, 1009 (7th Cir. 2001) (same). Second, and alternatively, Soliman maintains that if her Virginia conviction included both theft and fraud, we should adhere to the reasoning of the Third Circuit in *Nugent*, and apply the $10,000 minimum threshold of Subsection (M)(i) to any such hybrid offense. 367 F.3d at 176. The Attorney General contends in response, first, that the BIA properly categorized Soliman's conviction as a "theft offense," and thus as an aggravated felony, and second, that the BIA's interpretation of 8 U.S.C. § 1101(a)(43) is entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Because we are able to resolve Soliman's petition for review by finding that Soliman's conviction was not for a theft offense under Subsection (G), we need not reach and address her alternative contention

with respect to imputing Subsection (M)(i)'s minimum threshold to Subsection (G).

A.

1.

The Supreme Court has determined that the special deference rules of *Chevron* apply to BIA interpretations of the statutes it administers. *See INS v. Aguirre-Aguirre*, 526 U.S. 415, 424-25 (1999); *see also Blanco de Belbruno v. Ashcroft*, 362 F.3d 272, 278 (4th Cir. 2004) (applying *Chevron* to BIA interpretations of INS regulations). As the Court has explained, such deference is premised on the proposition that "'the power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.'" *Chevron*, 467 U.S. at 843 (quoting *Morton v. Ruiz*, 415 U.S. 199, 231 (1974)). When *Chevron* deference applies, a court in reviewing an agency action "is confronted with two questions":

> First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.* at 842-43. More specifically, *Chevron* deference applies to the BIA's interpretations of the Immigration and Nationality Act, the statute at issue here. *See Aguirre-Aguirre*, 526 U.S. at 424; *see also Blanco de Belbruno*, 362 F.3d at 278.

Pursuant to the foregoing, we are obliged to apply the principles of *Chevron* to the BIA's determination of the underlying issue in this case — the meaning of Subsection (G). However, we need not accord deference to the BIA's ultimate finding that Soliman's particular offense was an aggravated felony, which involves an issue of our appellate jurisdiction and an interpretation of Virginia criminal law, neither of which lies within the BIA's authority or expertise. *See Aguirre-Aguirre*, 526 U.S. at 424-25 (deferring to BIA interpretation of statute it administers); *Lopez-Elias v. Reno*, 209 F.3d 788, 791 (5th Cir. 2000) (declining to apply *Chevron* deference to enforcement of federal jurisdiction limitations).

2.

Under *Chevron*, we are first obliged to consider whether Congress has spoken on the precise question at issue — here, whether a "theft offense" includes fraud. *See Chevron*, 467 U.S. at 842. If Congress's intention is clear, the inquiry ends there, as "pure questions of statutory construction [are] for the courts to decide." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 446 (1987). The BIA Order determined that "the common definition of the term 'theft' includes fraud" and applied the definition of "theft offense" to encompass fraud. As explained below, however, that determination was contrary to the intention of Congress.

In assessing Congress's intent, we are obliged to look to and apply the "traditional tools of statutory construction." *Cardoza-Fonseca*, 480 U.S. at 446. And under settled rules, the plain language of the statute in question is deemed the most reliable indicator of Congressional intent. We are obliged to look to the statutory language as a whole, construing each section in harmony with every other part or section, because "Act[s] of Congress . . . should not be read as a series of unrelated and isolated provisions." *Gustafson v. Alloyd Corp.*, 513 U.S. 561, 570 (1995).

The plain text of § 1101(a)(43) shows that Congress specifically distinguished fraud from theft, and that it meant for the two offenses to be treated differently. Subsection (G) provides that an aggravated felony is "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one

year." Subsection (M)(i), on the other hand, provides for an aggravated felony classification for "an offense that involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." Congress thus decided to treat fraud as a distinct offense from theft within § 1101(a)(43), and it prescribed a $10,000 threshold before a fraud offense can qualify as an "aggravated felony."

The classic definitions of "theft" and "fraud," as those terms were commonly used at the time of the Act's adoption in 1952, appear to have key differences. For example, the crime of theft was then generally described as

> [a] fraudulent taking of corporeal personal property belonging to another, from his possession, or from the possession of some person holding the same for him, *without his consent*, with the intent to deprive the owner of the value of the same, and to appropriate it to the use or benefit of the person taking.

*Black's Law Dictionary* 1647-48 (4th ed. 1951) (emphasis added); *see also Black's Law Dictionary* 1477 (6th ed. 1990) (defining theft as "[t]he act of taking property without the owner's consent"). Under this definition, a theft involved five elements: (1) a taking; (2) of property; (3) from its owner or his representative; (4) without that person's consent; (5) with intent to deprive the owner to the benefit of the thief.[6]

On the other hand, the crime of fraud was then generally described as:

> An intentional perversion of truth for the purpose of *inducing another in reliance* upon it to part with some valuable thing belonging to him or *to surrender* a legal right; a false

---

[6]The line between the crimes of theft and fraud seems to be less clearly drawn in the most recent edition of *Black's Law Dictionary*. That edition provides two definitions of theft: first, "the felonious taking and removing of another's personal property with the intent of depriving the true owner of it; larceny"; and second, "[b]roadly, any act or instance of stealing, including larceny . . . and false pretenses." *Black's Law Dictionary* 1516 (8th Ed. 2004).

representation of a matter of fact, whether by words or by
conduct, by false or misleading allegations, or by conceal-
ment of that which should have been disclosed, which
deceives and is intended to deceive another so that he shall
act upon it to his injury.

*Id.* at 788 (emphasis added). When a theft offense has occurred, prop-
erty has been obtained from its owner "without consent"; in a fraud
scheme, the owner has voluntarily "surrendered" his property,
because of an "intentional perversion of truth," or otherwise "act[ed]
upon" a false representation to his injury. The key and controlling dis-
tinction between these two crimes is therefore the "consent" element
— theft occurs without consent, while fraud occurs with consent that
has been unlawfully obtained.

Where Congress has utilized distinct terms within the same statute,
the applicable canons of statutory construction require that we
endeavor to give different meanings to those different terms — here
"fraud" and "theft." *See, e.g.*, *United States v. Nordic Village*, 503
U.S. 30, 36 (1992). Similarly, statutory provisions are to be construed
as a whole, and we are not to give one word of a statute a meaning
"so broad that it is inconsistent" with its accompanying words.
*Gustafson*, 513 U.S. at 575. Further, "where Congress includes partic-
ular language in one section of a statute but omits it in another provi-
sion of the same Act, it is generally presumed that Congress acts
intentionally and purposefully in the disparate inclusion or exclusion."
*Cardoza-Fonseca*, 480 U.S. at 432 (internal quotation marks omitted).
Finally, we are "loath" to read one statutory provision so as to render
another provision of the same statute superfluous. *Cooper Indus. v.
Aviall Serv., Inc.*, 125 S.Ct. 577, 583 (2004); *see also* Norman J.
Singer, Statutes and Statutory Construction § 46.06 (6th ed. 2000).

In order to give proper effect to the intention of Congress that theft
and fraud offenses are to be treated differently for purposes of an "ag-
gravated felony" issue, a proper definition of the term "theft offense"
must distinguish between such an offense and a fraud scheme. And
the key distinction on that point is the "without consent" element,
present in the classic definition of a theft offense. This key distinction
was eliminated by the definition of "theft offense" used by the BIA
in this proceeding, substituting the term "unlawful" for "without con-

sent" of the property owner. BIA Order at 2. In so doing, the BIA authorized a fraud offense to satisfy the "unlawful taking" requirement of a theft, and thus be subsumed within the term "theft offense." Such a result is contrary to the intention of Congress, as evidenced by its separate and different treatment of fraud. *See Cardoza-Fonseca*, 480 U.S. at 432. Indeed, the BIA's definition of "theft offense" makes the fraud provision of Subsection (M)(i) superfluous, and it results in an outcome that is contrary to Congress's explicit inclusion of a $10,000 threshold for fraud offenses into Subsection (M)(i) — transforming all fraud offenses into theft offenses, and thus also into aggravated felonies under § 1101(a)(43). *See Cooper Indus.*, 125 S.Ct. at 583 (cautioning against reading statute so as to make portions superfluous).

Our conclusion that a taking of property "without consent" is an essential element of a theft offense is also consistent with the theft offense definitions adopted and utilized by the courts of appeals to previously consider this issue. These courts have concluded that a "theft offense" is "a taking of property or an exercise of control over property without consent with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent." *Hernandez-Mancilla*, 246 F.3d at 1009; *see also Nugent*, 367 F.3d at 174; *Vasquez-Flores*, 265 F.3d at 1125; *Corona-Sanchez*, 291 F.3d at 1205. *But cf. Abimbola v. Ashcroft*, 378 F.3d 173 (2d Cir. 2004) (describing BIA definition of theft as "similar" to definition adopted by Third, Seventh, Ninth, and Tenth Circuits, and distinguishing *Corona-Sanchez*).

As a result, we must conclude that the BIA's definition of a theft offense in the aggravated felony context, as including a fraud scheme, is contrary to congressional intent. That alone, however, is not dispositive of our resolution of Soliman's petition for review. In order to complete that determination, we must also assess whether, applying the proper "without consent" element of theft, Soliman has been previously convicted of an "aggravated felony."

### B.

In assessing whether Soliman's Virginia state court conviction was for a theft offense, we are obliged to utilize the categorical analysis

approach spelled out in *Taylor v. United States*, 495 U.S. 575, 598-600 (1990). This analysis requires that we first examine whether the statutory elements of credit card fraud in Virginia, under Virginia Code § 18.2-195, include the elements of an aggravated felony theft offense, under Subsection (G), "regardless of [the] exact definition or label" of the Virginia crime. *Taylor*, 495 U.S. at 599. If the statute of conviction may, but does not necessarily, include all the elements of "theft" under Subsection (G), we are then obliged to look to the indictment (or information) and similar documents for the state law offense, and assess whether the state court, in adjudging guilt, was required to find the elements of theft required by federal law. *Shepard v. United States*, 125 S.Ct. 1254, 1263 (2005); *Taylor*, 495 U.S. at 602.

1.

Importantly for this analysis, the Commonwealth of Virginia has created separate statutory provisions for "credit card theft," on the one hand, and "credit card fraud," on the other. In Virginia Code § 18.2-192, entitled "Credit card theft," an offender's unauthorized taking of money from a credit card owner is criminalized. This provision specifies that a person is guilty of credit card theft when, *inter alia*, the offender takes

> a credit card or credit card number from the person, possession, custody or control of another without the cardholder's consent . . . with intent to use it or sell it, or to transfer it to a person other than the issuer or the cardholder.

§ 18.2-192(a). A separate provision of the Virginia Code, § 18.2-195, entitled "Credit card fraud," creates the distinct crime of credit card fraud and specifies, *inter alia*, that:

> (1) A person is guilty of *credit card fraud* when, with intent to defraud any person, he:
>
> (a) Uses for the purpose of obtaining money, goods, services or anything else of value a credit card or credit card number obtained or retained in violation of § 18.2-192 or a credit

card or credit card number which he knows is expired or revoked; [or]

(b) Obtains money, goods, services or anything else of value by representing (i) without the consent of the cardholder that he is the holder of a specified card or credit card number or (ii) that he is the holder of a card or credit card number and such card or credit card number has not in fact been issued.
. . .

Va. Stat. § 18.2-195 (emphasis added). The credit card fraud provision of the Virginia Code thus criminalizes the *utilization* of another's credit card number to obtain something of value from a third person or institution, whether money, goods, or services, or security for a debt; and this provision also criminalizes the use of an offender's own credit card number or a fictional number under certain circumstances. And, the Virginia Court of Appeals has ruled that, in order to prove the offense of "credit card fraud," in violation of § 18.2-195, the prosecution is obliged to demonstrate a specific intent to defraud, which is characterized as the "'intent to deceive or trick.'" *Harrison v. Commonwealth*, 529 S.E.2d 330, 333 (Va. Ct. App. 2000) (quoting *Campbell v. Commonwealth*, 421 S.E.2d 652, 654 (Va. Ct. App. 1992)).

2.

Soliman was convicted in Virginia state court in 2002 of violating § 18.2-195, the "credit card fraud" provision of the Virginia Code. In ruling that this offense was an aggravated felony and that Soliman was deportable because of it, the BIA correctly concluded that her offense was not categorically a theft offense, because the credit card fraud statute criminalizes a wide range of conduct. As evident from the many activities which it criminalizes, however, a person could be convicted under the credit card fraud statute for: "[o]btain[ing] control over a credit card number as security for debt," or "[r]emit[ting] to an issuer or acquirer a record of a credit card or credit card number transaction which is in excess of the monetary amount authorized by the cardholder." § 18.2-195(1)(c), (2)(a). Neither of these activities involves the "taking of property." As a result, Virginia's "credit card fraud" offense does not "substantially correspond" to a theft offense under Subsection (G), and the Virginia offense for which Soliman

was convicted is thus not a "categorical" match for a Subsection (G) offense, as required by *Taylor*, 495 U.S. at 602.

Although the bare offense of Soliman's conviction is not a categorical match for a Subsection (G) theft offense, we are also obliged to apply a "modified" categorical approach, looking beyond the mere fact of her state conviction, to examine the charging papers and similar documents in the state court, to assess what Soliman's conviction "necessarily rested on." *Shepard*, 125 S.Ct. at 1259-61 (describing limitations of such inquiry in plea context); *Randhawa v. Ashcroft*, 298 F.3d 1148, 1152 (9th Cir. 2002) (discussing applicability of modified categorical approach to assessment of whether petitioner had committed theft offense). In this regard, the indictment specifies that Soliman "did feloniously and with the intent to defraud obtain property valued in excess of $200.00, by representing, without the consent of the cardholder, that she was the holder of a Visa check card, issued to Helen Best. Va. Code § 18.2-195." For multiple reasons, this indictment allegation does not show that Soliman was convicted of all the elements of a "theft offense" under Subsection (G).

First, the indictment does not charge Soliman with taking goods without the consent of the merchant, and thus she was not convicted of a theft offense against the merchant. Second, although the indictment does allege, as part of the fraud charge, that Soliman used the credit card itself without consent of its owner, the allegations of the indictment for her fraud conviction, fail to demonstrate that she was convicted of each element of credit card theft. In particular, the indictment tracks the provisions of § 18.2-195(1)(b)(i) of Virginia's credit card fraud statute, which makes it unlawful for any person, with the intent to defraud, to "obtain[ ] money, goods, services or anything else of value by representing . . . without the consent of the cardholder that he is the holder of a specified card or credit card number." Importantly, the indictment does *not* track § 18.2-195(1)(a) of the statute, which deals with the situation where a fraud scheme arises from an underlying credit card theft — where the card used to obtain property has been obtained "in violation of 18.2-192," the credit card theft statute. Nor is it conclusive, from the indictment, that Soliman actually obtained any property from the cardholder — the indictment merely alleges that she "represented" that the card was hers in order to obtain property from a merchant, whereas § 18.2-195(1)(a), by way of exam-

ple, requires that the card be "used" to obtain such property. Thus, it is not conclusive from the indictment that Soliman's Virginia conviction required proof of the elements of credit card theft. *See Shepard*, 125 S.Ct. at 1263; *Taylor*, 495 U.S. at 602. As a result, we must reject the BIA's contention that Soliman was convicted of a "theft offense" within the meaning of Subsection (G). She therefore has not been convicted of an "aggravated felony" within the meaning of § 1101(a)(43), and our Order of June 21, 2005, must be sustained.

## IV.

Because the BIA erred in determining that Soliman had been previously convicted in the Virginia state court of an aggravated felony, her petition for review must be granted and the BIA's order for her removal must be vacated.

*PETITION FOR REVIEW GRANTED AND*
*ORDER OF REMOVAL VACATED*