UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-1009**

FRANCISCO ALBERTO MENA,

                    Petitioner,

       v.

LORETTA E. LYNCH, Attorney General,

                    Respondent.

On Petition for Review of an Order of the Board of Immigration
Appeals.

Argued:  January 27, 2016          Decided:  April 27, 2016

Before WILKINSON, SHEDD, and AGEE, Circuit Judges.

Petition for Review granted by published opinion.  Judge Shedd
wrote the opinion in which Judge Agee joined.  Judge Wilkinson
wrote a dissenting opinion.

**ARGUED:** David Kendall Roberts, O'MELVENY & MYERS LLP,
Washington, D.C., for Petitioner.  Benjamin Mark Moss, UNITED
STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.
**ON BRIEF:** Joyce R. Branda, Acting Assistant Attorney General,
Civil Division, Douglas E. Ginsburg, Assistant Director, Office
of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C., for Respondent.

SHEDD, Circuit Judge:

Francisco Mena petitions for review of the Board of Immigration Appeals' ("BIA") decision finding him to be ineligible for cancellation of removal under the Immigration and Nationality Act ("INA") because he is an aggravated felon. For the following reasons, we grant the petition.

I

Mena is a native and citizen of the Dominican Republic who was admitted to the United States as a lawful permanent resident. An immigration judge ("IJ") ordered Mena's removal based on his two convictions of crimes involving moral turpitude not arising out of the same criminal scheme. See 8 U.S.C. § 1227(a)(2)(A)(ii). Mena did not appeal the removal order to the BIA, and he does not contest it in his petition for review.

During his immigration proceedings, Mena applied for cancellation of removal, a form of discretionary relief that is available to certain aliens who have not been convicted of an "aggravated felony." See 8 U.S.C. § 1229b(a)(3). For purposes of the INA, an aggravated felony is, among other things, a "theft offense (including receipt of stolen property) . . . for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(G).

2

Mena has a prior conviction for violating 18 U.S.C. § 659, which creates four offenses, each set forth in a separate paragraph. Pertinent here, the first paragraph of § 659 proscribes the illegal taking by embezzlement or theft of certain property that has moved in interstate or foreign commerce. The second paragraph proscribes the purchase, receipt, or possession of such property "knowing the same to have been embezzled or stolen." Mena was convicted under the second paragraph and was sentenced to a 60-month imprisonment term.

The IJ concluded that Mena is an aggravated felon based on his finding that the § 659 conviction falls within the scope of § 1101(a)(43)(G). Accordingly, the IJ pretermitted Mena's cancellation of removal application. Thereafter, in a single-member panel decision, the BIA dismissed Mena's appeal of the IJ's order.[1] As we discuss below, the BIA primarily based its decision on its view that § 1101(a)(43)(G) contains two separate types of offenses that qualify as an INA "aggravated felony": a "theft offense," which is the base offense listed in the statutory section, and "receipt of stolen property," which is contained in the parenthetical appended to the term "theft offense."

---

[1]Consistent with the BIA's analysis, the parties agree that § 659 is divisible and that Mena was convicted under the second paragraph.

Because the BIA issued its own opinion without adopting the IJ's reasoning, we review only the BIA decision. Hernandez-Avalos v. Lynch, 784 F.3d 944, 948 (4th Cir. 2015). We review de novo the BIA's determination that an offense is an INA aggravated felony, Omargharib v. Holder, 775 F.3d 192, 196 (4th Cir. 2014), affording "appropriate deference" to the BIA's statutory interpretation of the INA, Espinal-Andrades v. Holder, 777 F.3d 163, 166 (4th Cir. 2015).

## A.

When the Government alleges that a prior conviction qualifies as an INA aggravated felony, we must employ the "categorical approach" to determine whether the offense is comparable to an offense listed in the INA. Omargharib, 775 F.3d at 196. "Under that approach, we consider only the elements of the statute of conviction rather than the defendant's conduct underlying the offense." Id. The prior conviction constitutes an aggravated felony if it has the same elements as the generic INA crime. Id. However, if the statute of conviction "sweeps more broadly" and criminalizes more conduct than the generic federal crime, the prior conviction cannot count as an aggravated felony. Id. This is so even if the defendant actually committed the offense in its generic form. Id.

Because we examine what the prior conviction necessarily involved, not the facts underlying the case, we must presume that the prior conviction rested upon nothing more than the least of the acts criminalized and then determine whether even those acts are encompassed by the generic federal offense. Moncrieffe v. Holder, 133 S.Ct. 1678, 1684 (2013). Our focus on the minimum conduct criminalized by the statute of conviction is not an invitation to apply "legal imagination" to the prior offense; rather, there must be "a realistic probability" that the government would apply its statute to conduct that falls outside the generic definition of a crime. Id. at 1684-85.

B.

Applying the categorical approach, we addressed the meaning of the § 1101(a)(43)(G) term "theft offense" in Soliman v. Gonzales, 419 F.3d 276 (4th Cir. 2005). In that case, the BIA held that the alien's Virginia credit card fraud conviction constituted an INA theft offense and, therefore an aggravated felony, based on its determination that a conviction for fraud may also constitute "theft" for purposes of the INA. We disagreed. We first noted that the "plain text of § 1101(a)(43) shows that Congress specifically distinguished fraud from theft, and that it meant for the two offenses to be treated

5

differently." Id. at 282.[2] We then observed that "[w]hen a theft offense has occurred, property has been obtained from its owner 'without consent;'" but "in a fraud scheme, the owner has voluntarily 'surrendered' his property, because of an 'intentional perversion of truth,' or otherwise 'act[ed] upon' a false representation to his injury." Id. We thus explained that the "key and controlling distinction between these two crimes is . . . the 'consent' element — theft occurs without consent, while fraud occurs with consent that has been unlawfully obtained." Id. Accordingly, we held that "a taking of property 'without consent' is an essential element" of a § 1101(a)(43)(G) theft offense. Id. at 283.[3] Consequently, we found that the alien's credit card fraud offense was not an INA "theft offense" – i.e., an "aggravated felony."

We reiterated this holding in Omargharib. There, we considered whether the BIA properly concluded that the alien's

---

[2]In addition to the § 1101(a)(43)(G) "theft offense," an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000" is also an aggravated felony. See 8 U.S.C. § 1101(a)(43)(M)(i).

[3]Consistent with Soliman, the BIA now defines "theft offense" for purposes of § 1101(a)(43)(G) as "the taking of, or exercise of control over, property without consent whenever there is criminal intent to deprive the owner of the rights and benefits of ownership, even if such deprivation is less than total or permanent." In re Garcia-Madruga, 24 I. & N. Dec. 436, 440-41 (BIA 2008) (emphasis added).

Virginia larceny conviction was an INA theft offense. Finding that the BIA erred, we explained that "Virginia law treats fraud and theft as the same for larceny purposes, but the INA treats them differently. As such, Virginia larceny 'sweeps more broadly' than the INA's theft offense." 775 F.3d at 197 (citation omitted). We therefore held that a Virginia larceny conviction "does not constitute an aggravated felony for purposes of the INA under the categorical approach." Id.

C.

Mena's challenge to the BIA's decision is primarily based on our holding in Soliman. Mena argues that a person can be convicted under the second paragraph of § 659 for receipt of embezzled property, and the crime of embezzlement necessarily involves a taking of property with the owner's consent. Therefore, according to Mena, because "a taking of property 'without consent' is an essential element" of a § 1101(a)(43)(G) theft offense, Soliman, 419 F.3d at 283, a conviction under the second paragraph of § 659 is not a § 1101(a)(43)(G) "theft offense" under the categorical approach.

The BIA rightly did not dispute this interpretation of the second paragraph of § 659 or the crime of embezzlement, see J.A. 5, because the second paragraph of § 659 plainly criminalizes the receipt of certain embezzled property. Moreover, in what we have described as the "the classic definition," United States v.

7

*Smith*, 373 F.3d 561, 565 (4th Cir. 2004), the Supreme Court long ago explained that embezzlement "is the fraudulent appropriation of property by a person to whom such property has been intrusted [sic], or into whose hands it has lawfully come," *Moore v. United States*, 160 U.S. 268, 269 (1895); see also *United States v. Stockton*, 788 F.2d 210, 216 (4th Cir. 1986) (explaining that the crime of embezzlement requires that "the embezzled property must have been in the lawful possession of the defendant at the time of its appropriation"). This classic definition applies to the term as it is used in § 659. See, e.g., *United States v. Waronek*, 582 F.2d 1158, 1161 (7th Cir. 1978) (explaining in the context of a § 659 embezzlement conviction that although larceny "involves an unlawful trespass to the possessory interest of the owner in the property," where "the taker has been entrusted with possession of the property, the taking is more aptly described as embezzlement"); see generally *Boone v. United States*, 235 F.2d 939, 941 (4th Cir. 1956) (explaining that the § 659 "crime of receiving include[s] a receipt of property founded on an antecedent capture of it through fraud and deception").

Despite its acceptance of Mena's characterization of § 659 and the crime of embezzlement, the BIA applied the categorical approach and concluded that Mena's conviction under the second paragraph of § 659 categorically falls within § 1101(a)(43)(G). The key to the BIA's decision is its view that § 1101(a)(43)(G)

8

creates two "'distinct and separate offenses'" – "theft offense" (the base offense) and "receipt of stolen property" (the appended parenthetical offense) – which have "different generic definitions composed of different elements." J.A. 6 (quoting In re Cardiel-Guerrero, 25 I. & N. Dec. 12, 14 (BIA 2014)). As the BIA explained, this case involves "receipt of stolen property," a term it has interpreted "to include the category of offenses involving knowing receipt, possession, or retention of property from its rightful owner," J.A. 5 (citing In re Bahta, 22 I. & N. Dec. 1381, 1391 (BIA 2000)). Given the purported distinction between the two § 1101(a)(43)(G) offenses, the BIA reasoned that it "need not establish the elements of a 'theft' offense to demonstrate that a conviction for 'receipt of stolen property' qualifies as an aggravated felony" under § 1101(a)(43)(G). J.A. 6. For this reason, the BIA found our holding in Soliman – that a "theft offense" requires a nonconsensual taking of property from its owner - to be inapplicable.

The BIA supported its decision by pointing to its prior opinion in Cardiel-Guerrero, where it observed that receipt of extorted property falls within the generic definition of "receipt of stolen property" under § 1101(a)(43)(G). The BIA noted that in Cardiel-Guerrero, it "reasoned that although the owner may have 'consented in some aberrant sense' during the initial taking, 'it can hardly be argued that the victim of

9

extortion has also consented to having his property 'fenced,' concealed, or otherwise withheld from him against his will by third parties.'" J.A. 6 (quoting Cardiel-Guerrero, 25 I. & N. Dec. at 23-24). Analogizing extortion with embezzlement, the BIA explained that "although the initial taking under the second paragraph of 18 U.S.C. § 659 may have involved embezzlement or fraud, [Mena] cannot argue that an owner also consented to a third party buying or possessing his or her embezzled property." J.A. 6.

Additionally, the BIA stated that "a survey of State theft statutes supports [its] view that receipt of embezzled property is included in the generic definition of a 'theft offense (including receipt of stolen property)'" under § 1101(a)(43)(G). J.A. 6. The BIA noted that when § 1101(a)(43)(G) was added to the INA, most states had adopted the Model Penal Code's approach of consolidating the various common law offenses of larceny, embezzlement and false pretenses, receiving stolen property, and extortion into a unitary "theft" offense. J.A. 6. The BIA also found support for its holding in the fact that § 659 requires proof that the defendant received the property knowing that it was embezzled or stolen, and with the intent to deprive the owner of the rights or benefits of the property. J.A. 6.

D.

10

Common sense suggests that knowingly receiving either stolen or embezzled property – i.e., the offense set forth in the second paragraph of § 659 - is a form of theft. See, e.g., United States v. Johnson, 612 F.2d 843, 846 (4th Cir. 1979) (noting that the purpose of § 659 "is to protect goods moving in interstate commerce from theft"). However, we are not writing on a clean slate, and we may not simply rest our decision on some concept of common sense. Instead, we are obliged to apply the categorical approach, and in doing so we are guided by circuit precedent. Applying the categorical approach, we believe that Soliman, combined with a straightforward reading of §§ 659 and 1101(a)(43)(G), dictates the result in Mena's favor.

As noted, Soliman establishes that "a taking of property 'without consent' is an essential element" of a § 1101(a)(43)(G) "theft offense." 419 F.3d at 283. Moreover, the text of § 1101(a)(43)(G) provides that the term "theft offense" includes the crime of "receipt of stolen property."[4] The straightforward

_____

[4]The pertinent text of § 1101(a)(43)(G) actually reads: "theft offense (including receipt of stolen property)." The key word in this provision is "including," which most naturally means that the term that follows is a part of the term that precedes "including." See, e.g., P.C. Pfeiffer Co. v. Ford, 444 U.S. 69, 77 n.7 (1979) (holding that the use of the word "including" in the definitional provision of the federal statute being reviewed there indicates an element that is "part of the larger group" and rejecting the argument that "including" means "and" or "as well as"); see also Universal Maritime Serv. Corp. (Continued)

11

conclusion that follows is that a receipt crime – being an INA "theft offense" – requires a taking of property without consent.

By definition, embezzlement, like the closely related crime of fraud,[5] involves property that came into the initial wrongdoer's hands <u>with</u> the owner's consent. This is an immutable fact regardless of whether the property is subsequently transferred to, and received by, a third party. Accordingly, a conviction for receipt of embezzled property under § 659 does not require proof that the owner did not consent to the taking of the property. Lacking the "without consent" element, receipt of embezzled property under § 659 does not fall within the § 1101(a)(43)(G) theft offense definition. Consequently, the crime set forth in the second paragraph of § 659 "sweeps more broadly" than the generic § 1101(a)(43)(G) theft offense, and it is not an INA aggravated felony under the categorical approach.

In reaching this decision, we accept the government's unremarkable observation – premised on the BNA's prior <u>Bahta</u> decision - that the parenthetical clause of § 1101(a)(43)(G)

---

<u>v. Wright</u>, 155 F.3d 311, 319 n.10 (4th Cir. 1998) (similar holding).

[5]The Supreme Court has explained that "the word 'embezzled' itself implies fraudulent conduct on the part of the person receiving the money," and "it is impossible for a person to embezzle the money of another without committing a fraud upon him." <u>Grin v. Shine</u>, 187 U.S. 181, 189 (1902).

12

clarifies that the term "theft" is not limited to require proof that the offender was involved in the actual taking of the property. However, that observation simply does not support the BIA's conclusion that the "without consent" element of a "theft offense" is inapplicable to a "receipt offense." Section 1101(a)(43)(G) plainly applies to both "taking" and "receiving" offenses. Nonetheless, as we have explained, a "receipt offense" is one type of "theft offense" for purposes of the INA, and Soliman establishes that a necessary element of a "theft offense" is a taking from the owner without consent.

We also find the BIA's analogy between embezzlement and extortion misplaced. In Cardiel-Guerrero, the BIA noted that although "consent" of the property owner is an element of extortion, "the concept of 'consent' used in the law of extortion is highly unconventional and does not connote a voluntary or elective conferral of property." 25 I. & N. Dec. at 20. Indeed, as the Second Circuit has observed, the "consent" element in an extortion case presents the victim with a "Hobson's choice" and "is the razor's edge that distinguishes extortion from robbery." United States v. Zhou, 428 F.3d 361, 371 (2nd Cir. 2005). This type of "consent" stands in marked contrast to the lawful consent underlying an embezzlement crime. See generally Tredwell v. United States, 266 F. 350, 352 (4th Cir. 1920) (explaining that "[w]here one comes lawfully into the

13

possession of property, and afterwards and while it is in his possession forms and carries out the purpose of appropriating it to his own use, the crime thus committed is the crime of embezzlement; but if, at the time of getting possession lawfully, the one to whom property is intrusted [sic] has the intention of appropriating it to his own use, the crime thus committed is the crime of larceny").

Additionally, we find the BIA's reliance on its survey of State statutes and the Model Penal Code to be unavailing. Although the BIA pointed to the States' "trend" to consolidate various common law offenses into a unitary "theft" offense, that trend involves, among other things, certain fraud offenses. Of course, we implicitly rejected that trend in Soliman and Omargharib by holding that fraud offenses are not § 1101(a)(43)(G) "theft offenses."

Finally, we note the anomalous result that the BIA decision would create.[6] Under the BIA's reasoning, an alien who is

---

[6]Depending on the circumstances of a given case, we accord various levels of deference to the BIA's interpretation of the INA. Here, the parties disagree regarding the applicable level of deference we should apply. Our decision is based on the plain language of § 1101(a)(43)(G), as interpreted by Soliman, so we owe no deference to the BIA's statutory interpretation. See Espinal-Andrades, 777 F.3d at 166-67. However, even if the statute is ambiguous, "[w]e need not wade into the debate over the proper degree of deference, for it makes no difference in this case." Oxygene v. Lynch, 813 F.3d 541, 548 n.3 (4th Cir. 2016).

14

convicted under § 659 for embezzling up to $10,000 of property would not be an aggravated felon under § 1101(a)(43), yet another alien who is convicted under § 659 (and sentenced to a year of imprisonment) for knowingly receiving a fraction of the embezzled property would be. This result "makes scant sense" and cannot stand. Mellouli v. Lynch, 135 S.Ct. 1980, 1989 (2015) (rejecting BIA interpretation of the INA that treated "minor paraphernalia possession offenses . . . more harshly than drug possession and distribution offenses"); see also Castillo v. Holder, 776 F.3d 262, 270 n.6 (4th Cir. 2015) (in rejecting the BIA's decision that the Virginia crime of unauthorized use of a vehicle is categorically a "theft offense" under § 1101(a)(43)(G), we noted that "under the BIA's decision . . . an anomalous and unreasonable result would occur if a conviction of the 'lesser' crime of unauthorized use formed the basis for removability under [§ 1101(a)(43)(G)], while the greater crime of larceny would not").

                              III

     In short, based on our application of the categorical approach, we hold that a conviction under the second paragraph of § 659 is not a "theft offense (including receipt of stolen property)" under § 1101(a)(43)(G). The BIA therefore erred in finding Mena to be an aggravated felon who is ineligible for cancellation of removal under § 1229b(a)(3). Accordingly, we

grant the petition for review and remand for further proceedings

consistent with this opinion.[7]

PETITION FOR REVIEW GRANTED

---

[7]Our determination that Mena's § 659 conviction is not categorically an INA aggravated felony does not alter the basic nature of his offense. Mena may not have committed an INA "theft offense" as a technical matter, but he did commit an offense involving his knowing receipt of illegally obtained property. The government apparently feels strongly that Mena should not receive cancellation of removal relief, asserting that if (as we are ordering) the case is remanded, the BIA should be free to consider whether Mena is ineligible for cancellation of removal on another basis. Brief for Respondent, at 44. Mena disputes this assertion, but we decline to enter the fray. We note, however, that regardless of whether Mena is ultimately deemed to be eligible for cancellation of removal, the Attorney General's decision whether to grant cancellation relief is discretionary and generally not subject to judicial review. See 8 U.S.C. § 1252(a)(2)(B)(i).

We do not know if the issue of discretionary relief will eventually be considered in this case, and we express no opinion about that. However, as a general observation, it seems that a great deal of the effort and resources expended in appeals of cases of this type could potentially be preserved if the IJ or BIA proceeded beyond the eligibility determination and ruled alternatively on the discretionary cancellation decision. See, e.g., Ennis v. Att'y Gen. of the U.S., 617 Fed. Appx. 161, 163-64 (3rd Cir. 2015) ("We . . . note that we would not reach the aggravated felony issue even if Ennis had exhausted it because the IJ denied cancellation of removal on the independently dispositive ground that cancellation was not warranted in the exercise of discretion. . . . [W]e generally lack jurisdiction to review the discretionary denial of cancellation in any event.").

WILKINSON, Circuit Judge, dissenting:

Embezzlement is a theft. Ask the person seated next to you. He or she will tell you that it is.

The majority says not. Come again? The majority says embezzlement is not a form of theft.

It is from that proposition that I respectfully dissent.

* * *

The Immigration and Nationality Act declares that any "theft offense (including receipt of stolen property) . . . for which the term of imprisonment is at least one year" is an aggravated felony. 8 U.S.C. § 1101(a)(43)(G). This broad, generic language embraces a variety of offenses, and the plain meaning of "theft" makes clear that Mena's conviction under 18 U.S.C. § 659 is a theft offense.

The majority believes that embezzlement is not a theft because the owner of the funds voluntarily entrusts them to the embezzler. That totally ignores the fact that the whole purpose of the entrustment is for an honest stewardship of the funds. The betrayal of that purpose through embezzlement is purely and simply theft.

Theft is defined as "[b]roadly, any act or instance of stealing, including larceny, burglary, *embezzlement*, and false pretenses." *Theft*, Black's Law Dictionary (10th ed. 2014) (emphasis added). In common parlance, theft means "the action or

17

crime of stealing." Concise Oxford English Dictionary 1494 (11th ed. 2004). At the core of these definitions is a singular concept: theft happens when property is taken without any semblance of consent.

The parenthetical "(including receipt of stolen property)" reinforces § 1101(a)(43)(G)'s broad meaning. "Stolen property" means "goods acquired by," among other means, "theft." *Stolen Property*, Black's Law Dictionary (10th ed. 2014). Stolen property thus includes property taken through any of the common-law means that make up theft. This is consistent with the definition of the verb "steal": "[t]o take (something) by larceny, *embezzlement*, or false pretenses." *Steal*, Black's Law Dictionary (10th ed. 2014) (emphasis added). "Including," furthermore, means "'contain[ing]' or 'compris[ing] [] part of a whole.'" Chickasaw Nation v. United States, 534 U.S. 84, 89 (2001) (citing Webster's Ninth New Collegiate Dictionary 609 (1985)). Its use in conjunction with parentheses "emphasizes the fact that that which is within is meant simply to be illustrative . . . a circumstance underscored by the lack of any suggestion that Congress intended the illustrative list to be complete." Id. at 89. Far from narrowing the meaning of "theft offense," the parenthetical thus suggests that offenses similar to "receipt of stolen property" (i.e., receipt of embezzled property) are covered by the statute.

This plain meaning of theft is underscored by the fact that the INA uses the term "theft offense" in a generic sense. Its meaning therefore "roughly correspond[s] to the definitions" of theft found "in a majority of the States' criminal codes." See Taylor v. United States, 495 U.S. 575, 589 (1990). Those codes, meanwhile, had by the time of § 1101(a)(43)(G)'s 1994 enactment largely adopted the Model Penal Code's policy of consolidating various common law offenses, including larceny, extortion, blackmail, and embezzlement, into unitary theft offenses. J.A. 6, citing In re Cardiel-Guerrero, 25 I. & N. Dec. 12, 21 (BIA 2009); see also Model Penal Code § 223.1(1) ("Conduct denominated theft in this Article constitutes a single offense."). A generic definition of theft accordingly includes embezzlement.

The majority explicitly abjures common sense, i.e. plain meaning, in its approach to this problem. Maj. Op. at 11. But the categorical approach is supposed to "serve[] practical purposes." Moncrieffe v. Holder, 133 S. Ct. 1678, 1690 (2013). Common sense (or plain meaning, or practicality), as we all seemingly acknowledge, would lead us to reject petitioner's position. Petitioner Mena was convicted under the second paragraph of 18 U.S.C. § 659, which criminalizes receipt of stolen or embezzled property. He argues that he nonetheless has not committed a theft offense. But it is wrong to think that

19

§ 659's coverage of receipt of embezzled property somehow takes it beyond the realm of theft.

Like theft, embezzlement is also stealing. And "distinctions between" different types of stealing "serve no useful purpose in the criminal law but are useless handicaps from the standpoint of the administration of criminal justice." Rollin M. Perkins & Ronald Boyce, Criminal Law, 389-90 (3d ed. 1982). Like a victim of traditional larceny, a victim of embezzlement does not "consent" to the loss of his property. Nor does a victim of embezzlement, like a victim of larceny, "consent" to the involvement of a third party when his property is transferred. Both victims consider their property stolen.

Petitioner rejects this view, relying on our earlier decision in Soliman v. Gonzales. In that case, we held that an INA "theft offense" must involve a taking without consent. 419 F.3d 276, 283 (4th Cir. 2005). But even if it were not already silly to suggest that one "consents" to the embezzlement of one's property, see Pet'r's Br. at 18, Soliman had no occasion to consider the problem before us now. The predicate offense in Soliman was credit card fraud. 419 F.3d at 278. The court thus did not consider how to evaluate receipt offenses under the INA. And the plain meaning of "(including receipt of stolen property)," 11 U.S.C. § 1101(a)(43)(G), requires that Mena's conviction be treated as a theft offense.

The majority views this as an unfair result. It contends that embezzlement (as opposed to receipt of embezzled property) is not itself an aggravated felony unless the amount embezzled exceeds $10,000. Maj. Op. at 14-15. Making receipt of embezzled property an aggravated felony would thus risk, in the majority's view, treating the lesser criminal more harshly than the greater one. But this reasoning assumes that the original embezzler is not also guilty of a theft offense – an incorrect assumption. And even if the majority's understanding were correct, several considerations limit its relevance. First, fairness in the treatment of the family of embezzlers is more properly addressed during their individual sentencings. Second, § 1101(a)(43)(G) contains a safeguard. The term of imprisonment for any predicate theft offense must be "at least one year." Mena, for example, was sentenced to sixty months of incarceration. Minor receipt of embezzled property offenses thus still avoid aggravated-felony status. Finally, if the point of the categorical approach, properly adopted by the majority, is to compare the elements of predicate against generic INA offenses, then the majority's concerns are not only misplaced but irrelevant. The capacious terms of § 1101(a)(43)(G) embrace Mena's 18 U.S.C. § 659 conviction, and we are obliged to respect that legislative choice.

This case is much less complicated than the majority makes it. To repeat: embezzlement is a theft. Just ask the person two rows down.