UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-2140

CONCEPCION DEL CARMEN RAMOS NUNES,

Petitioner,

v.

JEFFERSON B. SESSIONS III, Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: September 25, 2018                    Decided: October 18, 2018

Before MOTZ, DUNCAN, and THACKER, Circuit Judges.

Petition for review denied. Judge Duncan wrote the opinion, in which Judge Motz and Judge Thacker concurred.

**ARGUED:** James Anthony Rivera, THE LAW OFFICE OF JAMES RIVERA, PLLC, Herndon, Virginia, for Petitioner. David Schor, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Chad A. Readler, Acting Assistant Attorney General, Holly M. Smith, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

Petitioner Carmen Ramos Nunes ("Ramos Nunes") challenges the decision of the Board of Immigration Appeals (the "BIA") to reverse the immigration judge's (the "IJ") grant of Ramos Nunes's request for protection under the Convention Against Torture (the "CAT") and to order her removed to El Salvador. Because substantial evidence supports the BIA's conclusion that the IJ clearly erred in finding that Ramos Nunes was more likely than not to be tortured upon her return to El Salvador, we deny her petition for review.[*]

I.

Ramos Nunes is a native and citizen of El Salvador. In 2004, at the age of thirteen, she entered the United States without inspection by an immigration officer. Since then, Ramos Nunes has resided in northern Virginia. She has no remaining family in El Salvador.

In 2015, Ramos Nunes was convicted of several misdemeanors, after which the Department of Homeland Security (the "DHS") initiated removal proceedings against her. On November 8, 2016, at a hearing before an IJ, Ramos Nunes conceded that she was removable as charged. Ramos Nunes then filed an application for asylum,

---

[*] Because substantial evidence supports the BIA's conclusion with respect to whether Ramos was more likely than not to be tortured by gang members if removed to El Salvador, we do not reach the question of whether the Salvadoran government consents to or acquiesces in gang violence.

2

withholding of removal, and CAT protection with the IJ.  In support of her application for relief under the CAT, Ramos Nunes argued that as a young, single mother with no familial ties to El Salvador, she is vulnerable and likely to be targeted by gang members if removed.  She contended that these gang members would likely subject her to sexual violence with the acquiescence of the Salvadoran government.  Further, Ramos Nunes argued that her status as a U.S. deportee makes it more likely that she would be targeted by gang members for extortion because deportees are perceived to have access to remittances from the United States.

The IJ held a hearing on March 29, 2017, at which Ramos Nunes's witness Dr. Joseph L. Wiltberger, Ph.D., an expert in country conditions in El Salvador, testified.  Notably, Dr. Wiltberger opined that Ramos Nunes "*could* be targeted by MS-13 or Barrio-18 [with] sexual violence or with rape" and "*may also be* targeted with extortion or taxation."  J.A. 115 (emphasis added).  On April 21, 2017, the IJ issued a written decision sustaining the conceded charge of removability; denying Ramos Nunes's applications for asylum, withholding of removal, and cancellation of removal; and granting relief under the CAT.  DHS appealed.  On September 7, 2017, the BIA reversed the IJ and denied Ramos Nunes's application for CAT protection.

In its decision, the BIA held that the IJ clearly erred in finding that Ramos Nunes would more likely than not be tortured with the acquiescence of the Salvadoran government if removed to El Salvador.  Specifically, the BIA found that the IJ's predictive findings that Ramos Nunes would be homeless and would subsequently become a victim of gang violence were speculative and improper under *In re J–F–F–*, 23

3

I&N Dec. 912, 918 & n.4 (A.G. 2006). The BIA also found that the evidence--in particular, Dr. Wiltberger's testimony--established a possibility, but not *likelihood*, of harm to Ramos Nunes. The BIA further concluded that Ramos Nunes failed to demonstrate that she would be tortured with the consent or acquiescence of the Salvadoran government, and, accordingly, ordered her removed to El Salvador.

This petition for review followed.

## II.

When the BIA reverses an IJ and issues its own opinion, we review only the BIA's decision. *Mena v. Lynch*, 820 F.3d 114, 116 (4th Cir. 2016). We must uphold the BIA's denial of relief under the CAT if it is supported by substantial evidence. *Mulyani v. Holder*, 771 F.3d 190, 200 (4th Cir. 2014); *see Kang v. Att'y Gen.*, 611 F.3d 157, 164 (3d Cir. 2010) (stating that courts "uphold the BIA's reversal of the IJ's grant of CAT relief if there is substantial evidence supporting the BIA's conclusion that the IJ clearly erred in finding a likelihood of torture"). On review, the BIA's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). In turn, the BIA reviews the IJ's factual findings, such as the likelihood of future events, for clear error, and reviews de novo the IJ's legal conclusions, including whether the burden of proof has been met. *See* 8 C.F.R. § 1003.1(d)(3)(i)–(ii); *Turkson v. Holder*, 667 F.3d 523, 530 (4th Cir. 2012) ("[A] decision regarding a petitioner's likely future mistreatment is a factual determination, subject to BIA review under the clearly erroneous standard.").

4

To qualify for protection under the CAT, an applicant bears the burden of proving that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). Torture is "an extreme form of cruel and inhuman treatment" that is "intentionally inflicted on a person" by or with the consent of a public official. *Id.* §§ 1208.18(a)(1)–(2).

Where an application for CAT protection rests on a "hypothetical chain of events," the applicant must show that each link in the chain is more likely than not to occur, as "[i]t is the likelihood of all necessary events coming together that must more likely than not lead to torture, and a chain of events cannot be more likely than its least likely link." *In re J–F–F–*, 23 I&N Dec. at 917–18 & n.4.

In this case, substantial evidence supports the BIA's conclusion that the IJ clearly erred in finding that "it is more likely than not that [Ramos Nunes] would be tortured if removed to the proposed country of removal," 8 C.F.R. § 1208.16(c)(2). Ramos Nunes theorizes that if removed to El Salvador, she will be subjected to sexual violence because she is a young, single mother without family in the country who was deported from the United States. This argument necessarily relies on a hypothetical chain of events, which the IJ describes as follows: (1) Ramos Nunes will be homeless or will otherwise lack a safe place to live in El Salvador; (2) she will be targeted by gang members for sexual violence or extortion; (3) her rejection of these advances will result in her sexual assault or murder; and (4) a public official would acquiesce to the sexual assault or murder.

A reasonable fact finder could find that Ramos Nunes has not shown that these events are more likely than not to occur, particularly with respect to the likelihood that she will be the victim of violence or extortion by gang members. To support her contention, Ramos Nunes relies on generalized evidence of violence against women. However, as Dr. Wiltberger testified, gangs inflict violence against society at large, men and women alike. While the type of violence used against women, as opposed to men, tends to be of a sexual nature, this does not establish that Ramos Nunes is more likely than not to be tortured. Moreover, as the BIA observed, Dr. Wiltberger testified to only the possibility, rather than the probability, of Ramos Nunes's harm, stating that as a woman, Ramos Nunes "*could* be targeted by MS-13 or Barrio-18 [with] sexual violence or with rape" and that she "*may also be* targeted with extortion or taxation" as a U.S. deportee. J.A. 115 (emphasis added).

Ramos Nunes argues that the BIA improperly emphasized select quotes from Dr. Wiltberger's testimony while ignoring others. But "our job as a reviewing court is not to reweigh the evidence" that the IJ considered. *Baharon v. Holder*, 588 F.3d 228, 233 (4th Cir. 2009). And even if we were inclined to weigh the evidence differently, we cannot simply conclude that "any reasonable adjudicator would be compelled" to reject the BIA's finding. *See* 8 U.S.C. § 1252(b)(4)(B).

Ramos Nunes advances just one argument as to why she in particular is at risk of gang violence upon removal: that she is likely to be tortured because gang members killed her grandfather in 2007 during an attempted robbery. But Ramos Nunes presents no evidence suggesting that her grandfather was personally targeted by gangs in 2007,

6

that her family was targeted by gangs either prior to or following her grandfather's death, or that gang members are aware of Ramos Nunes's connection to her deceased grandfather. In other words, the record does not compel a finding that the death of Ramos Nunes's grandfather is part of a larger pattern of violence against her family that is likely to be repeated if she were removed to El Salvador.

In sum, because we do not find that "any reasonable adjudicator would be compelled," 8 U.S.C. § 1252(b)(4)(B), to reject the BIA's conclusion with regards to the likelihood that Ramos Nunes would likely be tortured upon removal, we must determine that the BIA's conclusion is supported by substantial evidence.

IV.

For the reasons given, we deny the petition for review.

*PETITION FOR REVIEW DENIED*

7